LOTTINGER, Judge.
This is a compensation proceeding instituted against Carr Truck Service, Inc., and its workmen’s compensation insurer, Manufacturers Casualty Insurance Company, wherein the plaintiff seeks to recover compensation at the rate of $30 per week as for total and permanent disability beginning November 10, 1951.
The original petition filed in the matter set forth that the accident giving rise to the claim occurred on December 8, 1951, but subsequently a supplemental petition was filed wherein it was alleged that the correct date of the accident was November 10, 1951. The supplemental petition also set out that whereas in the original petition it had 'been alleged that, in addition to other injuries, plaintiff was suffering from a 'ruptured invertebrál disc, that he had subsequently learned that such was not the case, but that he was suffering from a severe, acute lumbrosacral strain 'through certain bony anomalies of the lumbro-sacral region, including a first-degree spondylolesthesis which was either caused or aggravated- by the accident of November 10, 1951. ' •
The defendants answered admitting the employment and amount of plaintiff’s wages but denying the occurrence of the accident and the existence of disabling injuries. A lengthy trial was had fin the court below after'which the trial'judge for written reasons assigned, rendered judgment dismissing plaintiff’s case and the matter is now before us on a devolutive appeal.
The record discloses that the plaintiff went to work for the employer on November 8, 1951, as a swamper or laborer in connection, with the trucking activities of Carr Truck Service, I.nc. On November 10, 1951, the date of the alleged accident, he was working in the marshes near Hack-berry, Louisiana, as a swamper on a drag-line which was being operated by a Mr. Louis Landry.. Due to the fact that operations were being carried on in the marsh devices known as matting boards were em *664 ployed to provide buoyancy. As the crane moved forward, the boom would be swung around and hooked to the matting boards which were then swung around in front of the crane so as to enable it to go forward. The plaintiff’s duties were to stand on the matting boards, which were slightly longer and wider than the dragline,' and to hook and unhook them from the boom. According to his testimony, it was while so engaged that he slipped from the matting board into the marsh where he sank into the mire to the upper part of both thighs. According to hi's testimony he was there a “couple of minutes” and that he “surged to get out”. He further testified, that when he got out his back was hurting a. little bit and that though he mentioned this fact to Mr. Landry, he thought he would “snap out of it”. The plaintiff continued to work throughout the day and remained in the service of his employer until November 15, 1951, when’he went home for the weekend and never returned.
In the course of his written opinion, the trial judge held as follows:
“The issues presented are factual and are the following:
“(1) Did plaintiff receive an injury during the course of his employment for Carr Truck Service, Inc., on November 8, 1951? (November 10, 1951)
“(2) If any injury did occur, to what extent is plaintiff disabled? The court will discuss the first issue first, for unless it is determined that he received an injury on November 8, 1951, (November 10, 1951) while in the course of employment, the second proposition will pass out of the picture.
“Pursuant to the provisions of [LSA-] R.S. 13:3662-3664; 13:3771-3775, defendant secured an order to orally examine plaintiff prior to trial. Pursuant to this order the depositions of plaintiff were taken by a reporter at Many, Louisiana, on March 20, 1952. A reading of the depositions disclose that while plaintiff told the adjuster for the insurance company he had had only one injury prior to the one alleged to have occurred on November 8, 1951,- (November 10, 1951) he had in fact, claimed and collected for many other injuries. On the trial of this cause plaintiff admitted he had not told the adjuster the truth. • The record in this case' discloses that plaintiff had received the following injuries upon which he had collected compensation prior to the alleged injury of November 8, 1951, (November 10, 1951) to-wit:
“A back and leg injury in 1937.
“Swallowing a fly in 1938.
“Back injury in 1939.
“Back injury in 1940.
“One back injury in 1945 or 1946.
“One back injury in 1950.
“Louis Landry, who operated the dragline where plaintiff was working on November 8, 1951, (November 10, 1951) was the only other person, besides plaintiff, at the scene of the alleged accident on that date. He testified that he saw plaintiff right after he fell in the muck and that plaintiff used the dragline bucket to haul himself upward, and he did not see plaintiff struggling as alleged by plaintiff in his petition, and according to his testimony on direct examination on the trial of the case, Landry testified that about an hour later plaintiff told him he believed he had hurt his back. Plaintiff did not report the alleged injury to his employer and for the next eight days did extremely heavy work, consisting of loading and unloading cement sacks and loading and unloading heavy pipe. All during this time he never complained of any pain in his back to any of his fellow employees.
“In Rivero v. Leaveau, La.App., 45 So.2d 418, the Orleans Court of Appeal held that an ‘accident’ within the meaning of the Workmen’s Compensation Act includes the giving way' of any portion of the laborer’s body while engaged in his work. The ruling was followed by our 1st Circuit Court in Stokes v. Miller, [La.App.] 50 So.2d 509. However, in the Stokes and *665 Rivero cases, supra, plaintiff had never had any prior injury and X-rays revealed ruptured discs in both cases. Both plaintiffs in the cited cases did not do any further work after each accident. In- the case at bar plaintiff worked for eight days after November 8, 1951, (November 10, 1951), at hard manual labor without complaining to anyone about his back hurting, with the exception of. what was said to Landry. The plaintiff also falsified about the number of injuries received prior to the one in this case. Plaintiff has collected on numerous back injury claims oyer the years.
“In Clark v. Southern Kraft Corporation, La.App., 200 So. 489, the Court held:
“ 'As a prerequisite to recovery of Workmen’s Compensation an employee must prove an accident occurring within the scope and course of his employment and also show a casual connection between such accident and his injuries and disability.’
“The Court does not believe that plaintiff has proven his case with that degree of certainty required by law. The plaintiff having falsified on several occasions the Court cannot place any reliance on his testimony for truth and veracity.
“The Court having reached its conclusion that .plaintiff has failed to prove he suffered ah injury while in the course of employment, there is no need to discuss the question of disability.
“For the written reasons assigned, judgment is hereby rendered in favor of defendants, Manufacturers Casualty Insurance Company, and Carr Truck Service, Inc., and against plaintiff, rejecting his claims and dismissing his suit at his costs.”
The record fully substantiates the findings of fact made by the trial judge. The plaintiff not only gave false, testimony on several occasions but all ,pf his testimony was indirect and evasive to say the least. We agree with the trial judge that his testimony is sadly lacking in truth and veracity.
The findings of fact-made by the’trial judge and concurred in by us would doubtless-be sufficient basis for a decision in the matter. We would, however, like to go further and point out that the record contains the testimony of four prominent doctors who generally agreed as to the existence of congenital or long standing anomalies, in the plaintiff’s low back. We deem it unnecessary’’ to go into detail regarding these gentlemen’s testimony as to the plaintiff’s present condition for neither their testimony nor that of the plaintiff indicates with any degree of certainty -that the plaintiff’s condition was in anyway altered or impaired as a result of his falling into the marsh.
’ Finding no manifest error in the judgment of the lower court, and for the reasons 'assigned above, the judgment appealed from is affirmed.
Judgment affirmed.