GLADNEY, Judge.
This action was brought by Clyde Dossey against his employer, International Paper Company, to collect workmen’s compensation for a period not exceeding 400 weeks for disability allegedly received within the course and scope of his employment. From a judgment rejecting his demands he has appealed.
Appellant’s cause of action is set forth in paragraph 2 of his petition:
“That on or about August 28, 1950, in the Parish of Webster, Louisiana, at the paper factory of the defendant at Cullen, Louisiana, while petitioner was in the employ of said defendant, International Paper Company, at wage of forty-four and 80/100 dollars per week and was performing services arising out of and incidental to his said employment in the course of the business of'' said defendant of operating a paper factory, he was on the inside of a railroad box car lifting and handling heavy rolls of paper from about nine o’clock A. M. to about 10:30 o’clock A. M. where it was very hot and he was hot all that time, and sweating until about fifteen minutes before his condition was such that he came out of said car, the lifting of said rolls of paper and the said heat then and there seriously and permanently impaired his nerves throughout his body and his brain, memory, heart,. lungs, digestive organs and limbs; that he at once reported his condition to the First Aid of said defendant and was by the First Aid given ammonia and told to rest awhile and go back and try to work; that he went back on the job about an 'hour thereafter, but was not able to do his usual work the remainder of the day; that he remained at his home thereafter about four days and then went to a physician of defendant who examined him arid gave 'him shots and treatment and under his advice petitioner was at home again about four days, when he went back and was examined by another physician of defendant who advised petitioner to rest a few more days and finally advised petitioner about September 19, 1950, to go back on the same job and work and try to get over his impairment ; that after petitioner had been at work a few days for defendant at same wages, on or about September 19, 1950, he got very hot again and while in box car lifting and stacking rolls of paper as he did about August 28th, and his condition became substantially the same as it did on or about August 28, 1950, he was weak all over, nervous, quit sweating and was exhausted ; that he quit work at once and was under the care of physicians of defendant until the latter part of December, 1950, when said physicians advised him to return to his work, and he did so until he began to have nervous and mental spells and weaknesses and he had to quit work January 24, 1950, and has since not been able to try to do that or any other kind of work of a reasonable kind; that it may be that had petitioner not gone back and done said work after he was first stricken about August 28, 1950, he would have largely overcome some of his said impairments 'but the said work thereafter, especially on or about September 19, 1950, made his said serious and permanent impairments of nerves, limbs, brain, muscles, digestive organs, etc., permanent.”
By way of defense the employer denies that Dossey suffered an accident or injury under the Workmen’s Compensation Act ■and further avers that it received no report or notice of the alleged injury until February 19, 1951, more than six months *244 from the date of disability. Also appellee denies there is any causal connection 'between any disability of appellant and his employment.
This cause was tried on its merits, decided and given further consideration on rehearing. The trial judge has furnished us with a written opinion clearly indicating' full and careful consideration was given to the factual and legal issues presented.
Counsel for appellant argues two important matters are to be determined in this court: (1) If plaintiff in his work for defendant in August and September, 1950, sustained a “disabling injury of the nature alleged”, and (2) The extent and duration of that disability.
The transcript of evidence and written reasons of the judge a quo disclose plaintiff’s demands were rejected for insufficiency of proof of causal connection between his alleged condition and his employment.
Clyde Dossey testified he was 23 years of age, married and had worked for his employer about two years prior to August 28, 1950. He states that about 9:30 or 10:00 o’clock on the morning of that date he was loading paper in a box car when he began to “feel funny”. He kept on working and just before the car was finished he quit sweating and his clothes 'began to dry. When the loading was finished he got out on the dock, took a deep breath of fresh air and, he says: “It just nearly knocked me down.” He had to lean against the door of the finishing room to keep from falling and remained there about five minutes. Then Guy Walraven, one of his fellow employees, came by and suggested getting a drink of water, after which he began to cramp in his stomach and legs, and his arms began to “knot up in the muscles”. Wal-raven told him to go> into the bathroom where he sat down and began to hurt worse. He then went to the cafeteria for the dinner meal, but after eating he got sick and went to the first aid room where the nurse gave him some ammonia and told him he would be all right. He testified he remained on the job the rest of the day but could not do his work. That night he went to bed and stayed until September 4th, when he visited in 'his wife’s mother’s home. He says he remained in bed five or six days and when he went back to Springhill he went to see Dr. Hand for an examination, and the doctor told him he had gotten too hot and gave him a shot. About five days later he says he went back to, see Dr. Garrett and Dr. Garrett told him he got too hot. He then went back to work and on the 19th of September he got too hot again and experienced the same trouble he had on August 28th and he was forced to again go to bed and was treated by Dr. Garrett. After staying in bed for several days he says he again went to Dr. Garrett who told 'him he needed a rest. After this he went to Nashville, Arkansas, where he stayed for a couple of weeks and while there he had a cramping spell which caused him to go to Dr. Holt and Dr. Christian for an examination and these doctors advised him that he had gotten too hot. He also says he was told-that he had had a nervous breakdown.
To corroborate his testimony that he suffered -an accident within the meaning of the Workmen’s Compensation Act Dossey called in his behalf, Guy Walraven. This witness, however, does not substantially corroborate the account of the accident as given by Dossey. Walraven says that he recalls that either in August or September in the evening about 7:30, he noticed Dossey was unloading “pretty pert and it was hot”. He suggested getting a drink of water and at that time Dossey said he was hurting and sweating quite a bit. After resting about fifteen minutes they went on back to work. He denies that any specific complaint was made of being overheated.
Ira Simpson, another fellow employee, worked in the same crew with Dossey and he also failed to substantiate the testimony of appellant, other than to say that at one time while working in the afternoon Dossey complained of his stomach hurting and was sent by the shipping clerk, Mr. McClary, for *245 first aid. He said Dossey came back liter saying he felt much better and continued to work out the rest of the shift. Simpson declared that at no time did Dossey suggest that he 'had gotten too hot.
W. D. McClary, shipping clerk, and foreman of the loading crew in which Dossey and Simpson worked, testified Dossey had never made a complaint to him that he had gotten overheated. He remembered with-cut recalling the month that one afternoon ' Dossey complained of his stomach and of being nervous, and was sent to. the'first aid room.. When he came back Dossey made the remark the medicine they had given him had helped him. He says the employee felt so much better he went ahead and made the shift.
Mrs. Mildred P. Henton, a first aid nurse, testified that Dossey reported to the first aid about 7:30 P. M., September 28, . 1950, She said she found he was nervous and had an upset stomach. She does not recall what medicine she gave him at the time but she does remember that Dossey then told her that previously on September 20th he had gotten too hot and had to go to the hospital on the night of the 20th, but was released on September 21st.
Appellant called in his behalf Drs. Leroy Scott and G. H. Cassity. These two Shreveport physicians testified they examined Dossey on May 25, 1951. Predicated on the history given by Dossey both expressed the opinion the employee had suffered a heat stroke, that his nervousness and general disability were due to that cause, and that he had 'been rendered totally and permanently disabled. On-cross-examination each of said doctors admitted their opinion as to causation would be to the contrary if plaintiff had informed them he ' had performed substantial work immediately following the times when Dossey is said to have sustained the heat strokes. Plaintiff failed to produce other doctors whom he says he visited and the record does not contain any testimony of Drs. Hand, Holt and Christian, nor is there any explanation for the nonproduction of these witnesses.'
Drs. W. R. Garrett, S. F. Martin and J. B. Benton gave medical testimony to the effect that plaintiff did not suffer a heat stroke as alleged and that other than suffering from nervousness,' his physical condition was negative. Dr. Garrett' testified- he treated Dossey for nervousness about the first of September but there was no complaint he had become overheated.
It is noted plaintiff and his wife definitely fixed the date he became overheated as being. August 28, ,1950, Mrs. Dossey testifying that this was eight days from her birthday. Frank Custer, the timekeeper and ■ W. D. McClary, the foreman, testified from records that Dossey did not work on August 28th. Notwithstanding this testimony, appellant insisted that he had worked on that date. It was further testified by these witnesses that Dossey worked forty hours the week ending September 2, T950 and fifty-six hours the week ending September 9, 1950. This was the same period of time Dossey testified he had remained in bed. Although confronted with employment records showing his presence Dossey insisted he had not so Worked and persisted in this contention until shown pay checks bearing his endorsements whereby he received $45.92 for the week ending September 2, 1950 and $80.64 for the week ending September 9, 1950. He then decided he must have suffered the heat stroke on August 25th. Plantiff’s work record from August 27, 1950 to January 27, 1951, was offered in evidence and shows reasonable regularity of employment although from September 16th to October 30th there were frequent absences from work.
The judge a quo concluded that the testimony of plaintiff was wholly unsatisfactory and the preponderance of the medical testimony was in favor of defendant’s contention that plaintiff sustained no injury. It is clear to us that the judgment appealed from is correct. There is no satisfactory evidence to corroborate the testimony of appellant he suffered disability within the scope and operation of the workmen’s compensation statute. This act, LSA-R.S. 23:1021, defines accident and injury to be:
*246 “ ‘Accident’ means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. .
* sH * * * *
“ ‘Injury’ and ‘Personal Injuries’ includes only injuries by violence to the physical structure oí the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.”
A compensation claimant has the burden of proof to show that his disability results from an accident which happened in the course of and arose out of his employment. See Goree v. Atlantic Oil Producing Co., 1925, 2 La.App. 558; Harkness v. Olcott-Stone Motors, La.App. 1942, 14 So.2d 102; Hammett v. Cities Service Refining Corporation, La.App.1951, 50 So.2d 331.
 Before an accident can be established, it must be shown that there was a causal connection between the employment activity and resulting injury, and unless some specific act resulting-in injury can be shown, or unless it can be shown that the nature of the work itself or nature of the work plus conditions under whi-ch it was done, was sufficiently strenuous to cause injury, then no causal connection can be deemed established. Waller v. Stone & Webster Engineering Corporation, La.App. 1949, 42 So.2d 872.
While there seems to be little doubt that plaintiff has suffered at times from a disability of a nervous character, he failed to prove the occurrence of conditions which would warrant .finding he suffered a heat stroke or heat exhaustion in the course of and scope of his employment. His testimony was not confirmed by any of his fellow workers and was absolutely contradicted by the records of his employer.
It follows- there is no manifest error in the judgment from which appealed, and it is, therefore, affirmed.
McINNIS, J., is recused.